IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


RODNEY BOOMER,  :
    Plaintiff  :
 :
    v.  :   CIVIL NO. 3:CV-14-1692
 :
 :   (Judge Conaboy)
CHARLES SAMUELS, ET AL.,  :
    Defendants  :



FILED
SCRANTON

SEP 3 0 2015

PER _____ CTC
DEPUTY CLERK

## MEMORANDUM
### Background

Rodney Boomer, an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg), recently filed this pro se action pursuant to the Federal Tort Claims Act (FTCA). An Amended Complaint (Doc. 10) was previously filed. The United States of America is the sole Defendant in this matter.

Plaintiff states that he was arrested and taken into federal custody on February 21, 2006. According to the Amended Complaint state and federal law enforcement authorities involved in Boomer's arrest falsely indicated in the paperwork relating to his criminal case that he had cooperated with authorities. Doc. 10, ¶ 3.

While confined at the Federal Correctional Institution, Gilmer, West Virginia (FCI-Gilmer) in 2008 Plaintiff allegedly discovered that this false accusation of police cooperation could be accessed via the inmate law library computer system. Plaintiff

1

states that he notified the Bureau of Prisons (BOP) in writing that the false accusation had placed his life in danger. However, his notification was disregarded and he was transferred to the Hazelton United States Penitentiary, Bruceton Mills, West Virginia (USP-Hazelton) during 2009.

Inmates at USP-Hazleton purportedly discovered the false police cooperation information and Plaintiff "almost lost his life" and was placed in solitary confinement. Id., ¶ 8. Boomer also allegedly had items of personal property including legal papers stolen. See id. at ¶ 12. Plaintiff contends that USP-Hazleton officials also disregarded his requests voicing concerns for his safety.

Next, Boomer was transferred to the United States Penitentiary, Coleman, Florida (USP-Coleman) and upon his arrival he informed prison officials of the life threatening risks caused by the false cooperation information. The Amended Complaint maintains that Plaintiff was again almost killed at USP-Coleman, as the result of that incident he was once again placed in solitary confinement. In addition, some of Boomer's personal property items were again purportedly stolen.

Plaintiff states that he was then transferred to the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood) where his voiced concerns for his personal safety were again allegedly ignored by prison staff. As a result, the Amended

Complaint maintains that thereafter another life threatening incident transpired which again resulted in Boomwer's placement in solitary confinement. He was also similarly subjected to theft of personal property including "certain federal case papers." Id. at p 15.

Plaintiff was next transferred to the United States Penitentiary, Tucson, Arizona (USP-Tuscon). While at that facility Plaintiff's life was again threatened which resulted in a transfer to USP-Lewisburg where he placed in the prison's Special Management Unit (SMU). On August 23, 2013, Plaintiff claims that he was involved in an altercation with his cell mate after he refused to turn over copies of his federal case papers. A second altercation allegedly transpired on October 22, 2013 when Boomer was accused by another prisoner of cooperating with authorities.

On November 1, 2013, Plaintiff states that his cell mate assaulted him after expressing a belief that Boomer had cooperated with law enforcement. As a result of this attack, Plaintiff was hospitalized for a concussion, facial fractures and a broken left hand and elbow. See id. at ¶ 20. The Amended Complaint contends that these assaults are occurring because prison officials are continually failing to protect his safety by negligently ignoring his repeated requests for protection and housing him with gang members and New York City inmates who are aware of the false cooperation rumor.

The Amended Complaint also asserts that Plaintiff is not being provided with proper medical care for his seizure condition, slow speech, memory loss, neck and back pain, and a toe nail condition. See id. at p. 12. The purported negligent medical care includes denial of the seizure medication Dilantin and failure to provide a neurological evaluation.

Presently pending is Defendant's motion to dismiss and for summary judgment. See Doc. 18. The opposed motion is ripe for consideration.

## Discussion

**Motion to Dismiss**

Defendant's pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendant's motion. Thus, their motion will be treated as solely seeking summary judgment. See Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary

judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered."

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in

its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**FTCA**

The FTCA provides a remedy in damages for the simple negligence of employees of the United States. See United States v. Muniz, 374 U.S. 150, 150 (1963). Under the FTCA, sovereign immunity is waived against persons suing the federal government for the commission of various torts. See Simon v. United States, 341 F.3d 193, 200 (3d Cir. 2003).

A plaintiff pursuing an FTCA claim must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said

duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961). The only proper Defendant for purposes of an FTCA claim is the United States of America. See 28 U.S.C. § 2679(d). Except for limited circumstances, an FTCA claim in federal court is limited to recovery of the sum certain amount requested in the underlying administrative claim.[1] See McMichael v. United States, 856 F.2d 1026, 1035 (8th Cir. 1988).[2]

It is well-settled that a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042;

---

[1] Since the only relief available under the FTCA is for compensatory damages, the requests for injunctive relief set forth in the Amended Complaint will be dismissed without prejudice.

[2] Specifically, 28 U.S.C § 2675(b) provides:

> Action under this section shall not be instituted for any sum in excess of the claim presented to the federal agency, except where the increased
> amount is based on newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

Turner, 679 F. Supp. at 443. The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[3]

**Certificate of Merit**

Defendant's initial argument contends that plaintiff's claims of medical negligence should be dismissed because he failed to file the required certificate of merit. See Doc. 31, p. 15.

As discussed above, a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. In order to present a prima facie case of medical malpractice /negligence under Pennsylvania state law, a plaintiff has the burden of presenting expert testimony by an appropriate licensed professional who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the Plaintiff's injury. Simpson v. Bureau of Prisons, 2005 WL 2387631 *5 (M.D. Pa. Sept.

---

[3] Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

8

28, 2005)(Vanaskie, C.J.).[4]

Rule 1042.3 requires a person who brings a claim of medical malpractice/negligence to file an appropriate certificate of merit either with the complaint or within sixty (60) days thereafter. The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the conduct which is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; (2) the claim of deviation by defendant from an acceptable professional standard is based solely upon allegations that other licensed professionals for whom defendant is responsible deviated from an acceptable professional standard; (3) expert testimony of an appropriate licensed professional is unnecessary.

Courts within this circuit have recognized that Rule 1042.3 is substantive law and should be applied by federal courts sitting in diversity. Schwalm v. Allstate Boliler & Construction, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); Scaramuzza v. Sciolla, 345 F. Supp.2d 508, 509-10 (E.D. Pa. 2004). It has also been held that a Plaintiff pursuing an FTCA claim must comply with Pennsylvania substantive law. Arrington, 2006 WL 860961 at *7. In

---

[4] The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." Berman v. United States, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing Brannan v. Lankenau Hospital, 490 Pa. 588 (1980). However, the instances when expert opinions may be unnecessary are rare. See Simpson, 2005 WL *6; Arrington v. Inch, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006) (Conner, J.).

addition, Plaintiff's incarceration or pro se status is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony. See Perez v. Griffin, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008)(Rule 1042.3 applies to incarcerated and pro se plaintiffs and constitutes a rule of substantive state law to which plaintiffs in federal court must comply).

Since Plaintiff has not submitted a Rule 1042.3 certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for this court to dismiss his FTCA medical malpractice/negligence claims without prejudice. See Osorio v. United States, 2007 WL 2008498 *2 (W.D. Pa. July 5, 2007); see also Henderson v. Pollack, 2008 WL 282372 *4 (M.D. Pa. Jan 31, 2008)(Caldwell, J.)(citing Hartman v. Low Security Correctional Institution, Allenwood, 2005 WL 1259950 * 3 (M.D. Pa. May 27, 2005)(Muir, J.).[5]

**Exhaustion**

Defendant alternatively argues that Plaintiff filed this action before exhausting an administrative tort claim regarding his medical care at USP-Lewisburg. See Doc. 31, p. 18.

An action filed pursuant to the FTCA must first be submitted

---

[5] In light of this determination as well as the non-exhaustion argument set forth below, Defendant's remaining argument that Plaintiff's medical negligence FTCA claims lacks merit will not be addressed. Nonetheless, the Court points out that undisputed medical records submitted by Defendant show that Boomer has received extensive treatment while at USP-Lewisburg including an MRI, consultations with an outside orthopedic specialist, as well as an ear, nose, and throat specialist.

10

in writing to the appropriate federal agency as an administrative tort claim. See 28 U.S.C. § 2675. It has been recognized that although an administrative tort claim does not need to include "every possible theory of liability" a plaintiff cannot present one claim to an agency and then initiate suit based on a different set of facts. Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).

The Defendant contend that Plaintiff filed an initial administrative tort claim relating to his medical care at USP-Lewisburg was denied on September 11, 2014, after this matter was filed. A second administrative tort claim by Boomer following his initiation of this matter which also concerned his USP-Lewisburg medical care was still pending at the time this dispositive motion was filed.

Since Plaintiff did not receive a final administrative denial of either of those two administrative tort claims from the BOP before commencing this action on August 1, 2014[6] there was failure by Boomer to comply with the exhaustion requirement.

**Statute of Limitations**

Defendant next argues that all of Plaintiff's pending claims relating to conduct which transpired at federal correctional facilities other than USP-Lewisburg were not initiated within the applicable statute of limitations and are therefore subject to dismissal on the basis of untimeliness. See Doc. 31, p. 21

---

[6] Boomer's Original Complaint is dated August 1, 2014. Under the standards announced in Houston v. Lack, 487 U.S. 266 (1988), his action will be deemed filed as of that date.

11

The statute of limitations for submitting an administrative tort claim to the agency is two (2) years. See id. at § 2401(b). A court may not extend the six month time period. See United States v. Kubrick, 444 U.S. 111, 117-18 (1979). The time limitations contained in the FTCA are jurisdictional in nature. Willis v. United States, 879 F. Supp 889, 892 (C.D. Ill. 1994). Thus, a plaintiff's failure to sue within the period of limitations recognized by § 2401 deprives a court of subject matter jurisdiction. Ahmed v. United States, 30 F.3d 514 (4th Cir. 1994).

The deadline for seeking judicial review is six (6) months after the agency's final denial of the administrative tort claim. See Pascale v. United States, 998 F. 2d 186 (3d Cir. 1993). This statute of limitations begins to run from the mailing date of the denial. Tuttle v. United States Postal Service, 585 F. Supp. 55 (M.D. Pa. 1983), aff'd, 735 F. 2d 1351 (3d Cir. 1984).

As previously discussed Boomer's Original Complaint is dated August 1, 2014 and his action will be deemed filed as of that date. Defendant asserts that Plaintiff received a final administrative denial of a failure to protect/loss of property claim relating to prisons other than USP-Lewisburg on March 18, 2011. Boomer received a second final administrative denial of a similar property loss/failure to protect related claim pertaining to his custody at federal prisons other than USP-Lewisburg on August 13, 2013.

The Defendant concludes that since this action was not commenced until August 1, 2014 a finding of untimeliness is appropriate. Since Plaintiff did not file his instant action

12

within six (6) months after the final denial of those administrative tort claims, this Court agrees that the claims that officials at Plaintiff's prior federal correctional facilities failed to protect his safety and were responsible for losses of his personal property are untimely and subject to dismissal.

With respect to Boomer's claims of negligent medical care at facilities other than USP-Lewisburg, Defendant notes that the inmate filed three (3) such administrative tort claims. The first was denied on November 13, 2012. The second was denied on December 19, 2012 and the third on January 24, 2013. As such, Defendant also seeks dismissal of those claims as being time barred. See Doc. 31, p. 22.

Once again since this action was not commenced within six (6) months following final administrative denial of any of those three tort claims, it is equally clear that Boomer's allegations of negligent medical care at other federal correctional facilities are also subject to dismissal as being untimely.

In conclusion, all of Plaintiff's pending claims relating to conduct which allegedly transpired during his prior confinements at federal prisons other than USP-Lewisburg are untimely and will not be allowed to proceed.

**Discretionary Function Exception**

Defendant's final argument contends that Plaintiff's FTCA failure to protect claims pertaining to his being assaulted by fellow USP-Lewisburg prisoners are barred by the FTCA's discretionary function exception. See Doc. 31, p. 25.

13

On August 23, 2013, Plaintiff states that he was involved in an altercation with his USP-Lewisburg cell mate after he refused to turn over copies of his federal case papers. A second altercation transpired on October 22, 2013 when Boomer was purportedly accused by another prisoner of cooperating with authorities.

On November 1, 2013, a third more serious incident allegedly transpired when Plaintiff's cell mate assaulted him after indicating his belief that Boomer had cooperated with law enforcement. The Amended Complaint contends that these assaults took place because prison officials failed to protect his safety by negligently housing him with gang members and New York City inmates who are aware of the false rumor that he cooperated with law enforcement officials.

As previously discussed, a plaintiff presenting an FTCA claim, must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) the negligent breach was the proximate cause of the plaintiff's injury/loss. The United States is only liable under the FTCA for conduct by government employees while acting within their scope of employment. Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004). 18 U.S.C. § 4042 imposes a general duty of care on the BOP to safeguard its prisoners. However, the regulation does not dictate the manner by which that duty is to be fulfilled. See Cohen v. United States, 151 F.3d 1338, 1343 (11th Cir. 1998). Hence, the BOP has the ability to exercise its judgment on how its duty under § 4042 is to be fulfilled.

A significant limitation on FTCA claims is imposed by 28 U.S.C. § 2680(a), which provides that liability may not be premised on a claim against a government employee which is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty."

"Conduct is not discretionary unless it involves an element of judgment or choice.'" Koch v. United States, 814 F. Supp. 1221, 1227 (M.D. Pa. 1993). In Berkovitz v. United States, 486 U.S. 531 (1988), the United States Supreme Court adopted a two part inquiry with respect to § 2680(a). First, a court must decide if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." Id. at 536. If so, "the employee has no rightful option but to adhere to the directive." Id. Federal employees such as correctional officers employed by the Bureau of Prisons simply "do not have discretion to violate mandatory requirements" or constitutional rights. Koch, 814 F. Supp. at 1228.

With respect to the first prong, while the BOP imposes a duty upon its employees to use reasonable care and ordinary diligence to protect the safety of inmates, there is no indication that there was a specific federal statute or regulation or policy which required the BOP to take a particular course of action to ensure Boomer's safety from being assaulted by other inmates. See Donaldson v. United States, 281 Fed. Appx. 75 (3d Cir. 2008). The "BOP retains sufficient discretion in the means it may use to fulfill" its duty of protecting prisoners from being assaulted by

other inmates. Id. at 77.

The Defendant acknowledges that Plaintiff was assaulted by his cell mate on November 1, 2013. Boomer sustained injuries in the attack which required him to be hospitalized. An exhibit submitted by the Defendant also provides that Boomer was observed fighting with other prisoners on August 23, 2013 and October 22, 2013. See Doc. 30-2, Attachment 6, p. 15. Furthermore, another written exhibit from the defendant, a Inmate Investigative Report dated February 22, 2014, admits that "a threat to the safety of inmate Boomer does exist." Doc. 30-3, Attachment 2, p. 4.

According to a declaration under penalty of perjury by Special Investigative Administrator Suzanne Heath of USP-Lewisburg, Boomer arrived at USP-Lewisburg on July 23, 2013 and was immediately placed in the prison's SMU. See Doc. 30-2, Exhibit B, p. 36. According to Heath, the SMU is more restrictive than general population and its residents are considered high risk and subject to careful monitoring.

Heath notes that Plaintiff is presently housed in X Block within the SMU which contains double cells, larger living areas and private showers within the cell. An X Block inmate does not share recreation with inmates who reside on other housing blocks and in fact only has recreation with his cell mate. Moreover, Heath states that Plaintiff presently only has contact with his cell mate who has been deemed not to pose a threat to Boomer's safety.

If Plaintiff was immediately placed in X Block upon his arrival it would certainly support the argument that the BOP used

16

reasonable care in an effort to protect Boomer from attacks by other prisoners. However, it is unclear to this Court from the record presented thus far as to how long Plaintiff has been in X Block. There is clearly no indication that Plaintiff has spent the entire period of his USP-Lewisburg incarceration in X block.

Second, Heath acknowledges that pursuant to a January 30, 2014 letter from Boomer a threat assessment was completed. However, since Plaintiff alleges that he has been filing written complaints to multiple BOP officials for years alleging that he was at risk of assault by other prisoners due to false information in his federal criminal case, there is clearly a question as to why a threat assessment was not undertaken until February 2014. This issue is further bolstered by Boomer's contentions that he was previously assaulted and/or threatened with harm by inmates at every one of the multiple federal correctional facilities where he was previously housed and that he assaulted at USP-Lewisburg over two months earlier on November 1, 2013. Furthermore, the BOP acknowledges that it has identified several prisoners at USP-Lewisburg who are to be kept separated from the Plaintiff.

Since it is unclear as to when Boomer was placed in X Block and why a threat assessment was not prepared on Boomer by the BOP until February 2014, this Court cannot presently conclude that based upon the undisputed facts the failure to protect claims pertaining to Plaintiff's confinement at USP-Lewisburg are barred by the discretionary function exception. Given those concerns, the motion for summary judgment will be denied with respect to this

17

argument and those limited failure to protect claims will be allowed to proceed.

Upon disposition of the parties' recently submitted discovery related motions, they will be granted an additional opportunity to file dispositive motions and the Defendant may reassert the discretionary function exception argument if it so chooses. However, any such argument should address the concerns outlined herein. An appropriate Order will enter.

_____
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 30th, 2015