IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


RODNEY BOOMER,                       :
     Plaintiff                      :
                                     :
  v.                                 :    CIVIL NO. 3:CV-14-1692
                                     :
                                     :    (Judge Conaboy)
CHARLES SAMUELS, ET AL.,             :
     Defendants                     :
_____

## MEMORANDUM
## Background

    This pro se action pursuant to the Federal Tort Claims Act (FTCA) was filed by Rodney Boomer, an inmate presently confined at the United States Penitentiary, Coleman, Florida (USP-Coleman). Named as sole Defendant is the United States of America.[1] An Amended Complaint (Doc. 10) was previously filed.

    By Memorandum and Order dated September 30, 2015, Defendant's motion for summary judgment was partially granted. See Doc. 89. Summary judgment was granted with respect to all claims except Boomer's allegations that officials at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg) negligently failed to protect his safety.

    Boomer was arrested and taken into federal custody on February 21, 2006. According to the Amended Complaint, paperwork relating

---

   [1] The only proper Defendant for purposes of an FTCA claim is the United States of America. See 28 U.S.C. § 2679(d).

1

to Plaintiff's criminal case which was readily accessible to other prisoners via an electronic legal research database falsely indicated that he had cooperated with state and federal law enforcement authorities.  Plaintiff allegedly discovered that this false accusation of police cooperation in 2008 while confined at the Federal Correctional Institution, Gilmer, West Virginia (FCI-Gilmer).

Plaintiff claims that his written notification that the false accusation had placed his life in danger was ignored by the Bureau of Prisons (BOP).  Prior to his arrival at USP-Lewisburg, Boomer asserts that he was almost killed by inmates at four federal correctional facilities where he was previously confined.  As s result of those incidents, Plainitff was placed in solitary confinement at some of those facilities.  The Amended Complaint indicates federal prison officials continually ignored his repeated requests for protection

Boomer arrived at USP-Lewisburg on July 23, 2013 and was immediately placed in the prison's Special Management Unit (SMU).  It is undisputed that upon his arrival at the prison, Boomer informed staff during an interview that he could not be housed with any inmates who were either from New York or had gang affiliation.  See Doc. 178, pp. 7-8. On August 23, 2013, Plaintiff states that he was involved in an altercation with his USP-Lewisburg cell mate after he refused to turn over copies of his federal criminal case paperwork.  A second altercation transpired on October 22, 2013

when Boomer was purportedly accused by another prisoner of cooperating with authorities.

On November 1, 2013, a third more serious incident allegedly transpired when Plaintiff's cell mate assaulted him after indicating that Boomer had cooperated with law enforcement. As a result of this attack, Plaintiff was hospitalized for a concussion, facial fractures and a broken left hand and elbow. See id. at ¶ 20. Boomer was transferred to X Block at USP-Lewisburg on November 5, 2013 where he remained until January 1, 2014.[2] Plaintiff returned to X Block on November 20, 2014 and remained there until his December 20, 2015 transfer to USP-Coleman.

The Amended Complaint contends that the above described assaults at USP-Lewisburg took place because prison officials failed to adequately protect Boomer's safety by negligently housing him with gang members and New York City inmates who were aware of the false rumor that he had cooperated with law enforcement officials.

Presently pending is Defendant's second motion for summary judgment. See Doc. 164. The Plaintiff has not filed an opposing brief. However, Boomer has filed two motions to compel discovery

---

[2] Information previously provided to Court explained that X Block is a segregated housing unit within the SMU which caters to prisoners having greater security concerns and contains double cells, larger living areas and private showers within the cell. An X Block inmate does not share recreation with inmates who reside on other housing blocks and in fact only has recreation with his cell mate.

3

(Docs. 186 & 197); a motion for preliminary injunctive relief (Doc. 209); and a request for an evidentiary hearing (Doc. 210). All of those pending motions will be addressed below.

### Discussion

**Motions To Compel**

Boomer's initial pending motion to compel asserts that the Defendant has not produced two discoverable documents "which are letters from Plaintiff to Defendant explaining his concerns about his safety." Doc. 186, p. 2. The second motion similarly seeks production of those same letters.

Defendant asserts that Plaintiff never served it with a request for the discovery materials at issue prior to the expiration of the discovery period in this matter. Since discovery was closed for over four months prior to the date Plaintiff allegedly served the discovery request at issue, since Plaintiff was not granted leave to engage in additional discovery the Defendant was under no obligation to provide a response, Plaintiff's pending motions to compel, his 9th and 10th such motions in this case, will be denied.

**Preliminary Injunctive Relief**

Plaintiff's motion asserts that he has been denied adequate care by the medical staff at USP-Coleman, his current place of confinement.³ Boomer indicates that he has neurological and

---

³ The motion does include a notation that his pending FTCA
(continued...)

4

physical mobility problems which are worsening and requests to be seen by a neurologist.

It is initially noted that M.D. Pa. Local Rule 7.5 requires that a party who files a pretrial motion submit a brief in support of said motion within fourteen (14) days of its being filed with the court. If a supporting brief is not timely filed, "such motion shall be deemed to be withdrawn." A review of the docket establishes that Plaintiff has failed to filed a brief in support of his motion. Consequently, it is appropriate for Boomer's pending motion for preliminary injunctive relief to be deemed withdrawn.

In addition, Plaintiff's motion is totally unrelated to the claims before this court and USP-Coleman is not located within the confines of the Middle District of Pennsylvania. If Plaintiff feels that he is presently being denied adequate medical care at USP-Coleman he should seek relief before a federal court of appropriate jurisdiction. Boomer's motion for preliminary injunctive relief will be dismissed.

**Evidentiary Hearing**

Plaintiff has also filed a request asking that an evidentiary hearing or in the alternative "mitigation" (presumably mediation) be scheduled. Based upon this Court review of the record, an

---

[3](...continued)
claim are meritorious because Plaintiff was assaulted while residing in USP-Lewisburg D-Block on November 1, 2013 and was not moved to X Block until November 5, 2013. Doc. 209, p. 2.

evidentiary hearing is not required for disposition of the pending summary judgment motion. If this Court determines that any of Boomer's claims should proceed, his request will be reconsidered

**Summary Judgment**

Defendant argues that it is entitled to entry of summary judgment because: (1) the negligent failure to protect claims fail and (2) the discretionary function exception bars consideration of Boomer's claims.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered

6

evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Failure to Protect**

It is undisputed that following his arrival at USP-Lewisburg Plaintiff was involved in three separate altercations with three different cell mates. Plaintiff contends that these assaults stemmed from prison's officials' negligent failure to protect him from harm after being advised that information from his criminal

7

case which was available to prisoners through a legal research web site placed him at risk. It is also asserted that USP-Lewisburg staff was negligent for not immediately conducting a threat assessment upon Boomer's entry into that facility.

As previously discussed by the September 30, 2015 Memorandum and Order, the FTCA provides a remedy in damages for the simple negligence of employees of the United States. See United States v. Muniz, 374 U.S. 150, 150 (1963). Sovereign immunity is waived under the FTCA against persons suing the federal government for the commission of various torts. See Simon v. United States, 341 F. 3d 193, 200 (3d Cir. 2003).

In order to succeed on his FTCA claim, Boomer must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. Mahler v. United States, 196 F. Supp. 362, 364 (W.D. Pa. 1961). Generally speaking, recovery on an FTCA claim is limited to of the sum certain amount requested in the underlying administrative claim. See McMichael v. United States, 856 F.2d 1026, 1035 (8th Cir. 1988).

A federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involves a federal inmate, the

government's duty of care is one of ordinary diligence.  See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443.  The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred.  Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987). Pennsylvania law requires a plaintiff to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence.  Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[4]

Defendant argues that based upon the undisputed facts, "[t]here is a complete absence of any record evidence that staff members failed to perform appropriate investigations prior to assigning Boomer's housing during his incarceration at USP-Lewisburg." Doc. 178, p. 13.  They add that the safety concerns expressed by Plaintiff during his USP-Lewisburg intake interview were addressed in that he was housed apart from the two groups of inmates he deemed to pose a threat.  Furthermore, although a threat assessment was not performed until February 2014, only limited additional action was required as Plaintiff was already being separated from the inmates who he identified as being potential threats.

A declaration under penalty of perjury by USP-Lewisburg Special Investigative Agent James Fosnot provides that upon

---

[4] Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

9

Plaintiff's arrival at USP-Lewisburg a Special Investigative Supervisor interview was conduct.[5]  See Doc. 177-1, Exhibit A, p. 3.  During that interview, Boomer informed prison staff of his need to be separated from inmates with gang affiliations and from New York.  According to Fosnot, Boomer was thereafter assigned a cell mate who was neither from New York or who had any gang affiliations.  See id. at ¶ 10. It was this prisoner who had an altercation with Plaintiff on August 23, 2013.

Following that incident, Fosnot states that Plaintiff received a new cell mate who was also neither from New York nor gang affiliated.  This was the prisoner who Boomer fought with on October 22, 2013.  The third inmate who fought with Plaintiff on November 1, 2013 was also not from New York nor affiliated with a gang.  Moreover, none of the prisoners involved in the three incidents underlying Plaintiff's failure to protect claim were listed as being separtees from Boomer at the time they were housed together.  The Court has also been provided with information showing that two of the three alleged assailants never employed the USP-Lewisburg electronic law library (ELL) from the time of their respective arrivals at the prison to the dates of their respective altercations with Boomer.  See Doc. 171, Exhibit B.  The third prisoner did not use ELL at any poin during 2013, the year Boomer arrived at USP-Lewisburg.  As such, there would be no basis for a determination that they would be aware that information available

---

[5] A copy of the written screening report which has been submitted confirms Fosnot's declaration.

10

on ELL indicated that Boomer cooperated with law enforcement. Finally, reports relating to the misconduct charges filed following the three fights contain no indication that the fisticuffs were the result of suspicions that Plaintiff had cooperated with law enforcement.

Also submitted for consideration are Plaintiff's responses to Defendant's second set of interrogatories and a copy of his March 31, 2016 deposition testimony. Those submissions show that Plaintiff admits that because of memory and medical issues he cannot recall the names of the his former USP-Lewisburg cell mates nor even provide a description of those individuals. Boomer further testified that he remembers only that he was assaulted at USP-Lewisburg and cannot provide any details regarding any assault or assailant.

Based upon the undisputed facts, Plaintiff was interviewed regarding his security concerns when he arrived at USP-Lewisburg but a threat assessment was not conducted until February, 2014. During his interview, Boomer stated that he needed to be kept separate from prisoners who were from New York and gang members. Prison official acted in accordance with that request and there is no assertion that an earlier threat assessment would have revealed any other safety concerns.

Undisputed evidence provided by the Defendant establishes that the three different cell mates who were subsequently involved in altercations with Boomer were not from New York and had no gang affiliations. Inmate Boomer was housed in the SMU while at USP-

11

Lewisburg and in the SMU's X Block, a segregated housing unit, for a significant portion of his USP-Lewisburg stay. Given those undisputed considerations coupled with Plaintiff's assertion that he cannot recall any specifics relating to his USP-Lewisburg stay, the Defendant has both addressed the concerns outlined by this Court's September 30, 2015 Memorandum and Order and satisfied its burden of showing that there is no basis for a claim that the Defendant's negligence was the proximate cause of the underlying altercations. The record clearly supports a finding that the prison officials exercised ordinary diligence in that they acted on Plaintiff's request not to be assigned cell mates who ere from New York or gang affiliated. As such, granting the request for entry of summary is appropriate.

**Discretionary Function Exception**

The Defendant's remaining summary judgment argument contends that Plaintiff's claims are precluded from consideration by the FTCA's discretionary function exception. See Doc. 178, p. 16. They explain that Plaintiff's security issues were addressed and he was only assigned cell mates who did not fall within the categories of concern expressed by Boomer. Since the challenged cell assignments were discretionary decisions and Plaintiff was only housed with prisoners who were not previously known to pose a threat to his safety, the Defendant concludes that those decisions fall under the discretionary function exception of the FTCA. See id. at p. 21.

A significant limitation on FTCA claims is imposed by 28

12

U.S.C. § 2680(a), which provides that liability may not be premised on a claim against a government employee which is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." "Conduct is not discretionary unless it involves an element of judgment or choice.' <u>Koch v. United States</u>, 814 F. Supp. 1221, 1227 (M.D. Pa. 1993). In <u>Berkovitz v. United States</u>, 486 U.S. 531 (1988), the United States Supreme Court adopted a two part inquiry with respect to § 2680(a). First, a court must decide if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." <u>Id</u>. at 536. If so, "the employee has no rightful option but to adhere to the directive." <u>Id</u>. The second part of the inquiry provides that if the decision was one "which balances competing considerations or identifiable policy factors such as budgetary considerations, safety concerns, allocation of limited resources, etc. may be discretionary." <u>Koch</u>, 814 F. Supp at 1227, citing <u>Johnson v. United States, Department of the Interior</u>, 949 F.2d 332, 340 (10th Cir. 1991).

As previously discussed,18 U.S.C. § 4042 imposes a general duty of care on the Federal Bureau of Prisons (BOP) to safeguard its prisoners. However, the regulation does not dictate the manner by which that duty is to be fulfilled. <u>See</u> <u>Cohen v. United States</u>, 151 F.3d 1338,1343 (11th Cir. 1998). Hence, the BOP has the ability to exercise its judgment on how its duty under § 4042 is to be fulfilled. Federal employees such as correctional officers employed by the BOP simply "do not have discretion to violate

13

mandatory requirements" or constitutional rights. Koch, 814 F. Supp. at 1228.

With respect to the first prong of Berkovitz, while the BOP imposes a duty upon its employees to use reasonable care and ordinary diligence to protect the safety of inmates, there is no indication that there was a specific federal statute or regulation or policy which required the USP-Lewisburg correctional staff to take a particular course of action to ensure Boomer's safety from being assaulted by other inmates. See Donaldson v. United States, 281 Fed. Appx. 75 (3d Cir. 2008).

Clearly, the decision as to where and with whom to house Boomer involved an element of choice. The "BOP retains sufficient discretion in the means it may use to fulfill" its duty of protecting prisoners from being assaulted by other inmates. Id. at 77.

Although the Plaintiff was not initially placed in X Block upon his arrival and there was not a threat assessment immediately performed, the supporting materials submitted by the Defendant in support of its summary judgment argument nonetheless show that the BOP used reasonable decision making in an effort to protect Boomer from attacks by other prisoners. The undisputed facts show that upon his arrival at USP-Lewisburg Boomer was immediately placed in the SMU and he was not assigned any cell mates who fit into the wide categories of concern expressed by the Plaintiff himself (specifically, prisoners from New York or those with gang affiliations).

14

As recognized by the Third Circuit Court of Appeals, a judgment as to the best way to protect prisoners from attack by other prisoners is the type of decision that the discretionary function exception was designed to shield. Thrower v. United States, 528 Fed. Appx. 108, 110 (3d Cir. 2013). Since the challenged actions of the prison officials in this case clearly involved an element of choice and their assignment of cell mates for Boomer clearly took into consideration the fears expressed by that inmate, the concerns expressed by the September 30, 2015 Memorandum and Order have been satisfied and this Court agrees that the discretionary function exception is applicable. See Rinaldi v. United States, 460 Fed. Appx. 80, 81-82 (3d Cir. 2012)

There have been no facts presented which would support a claim that Plaintiff should not have been assigned a cell mate while at USP-Lewisburg. It has not been suggested that any of the cell mates at issue had any prior history with Boomer or were listed as separtees from one another. The assignment of cell mates clearly is a discretionary decision. As such, such decision making by USP-Lewiburg staff falls within the discretionary function exception. Accordingly, entry of summary judgment in favor of the Defendant under the discretionary function exception is also warranted. An appropriate Order will enter.

                                            S/Richard P. Conaboy
                                            RICHARD P. CONABOY
                                            United States District Judge

DATED: MARCH 21, 2017